IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JEFFREY A. MARBURGER,

                Plaintiff,                           OPINION and ORDER

    v.

                                                         23-cv-311-wmc

SOO LINE RAILROAD COMPANY
d/b/a CANADIAN PACIFIC RAILWAY,

                Defendant.

---

      This personal injury action arises out of plaintiff Jeffrey Marburger's two alleged exposures to noxious fumes and his later slip and fall while employed by defendant Soo Line Railroad Company. Marburger brings claims against Soo Line under the Federal Employers' Liability Act, 45 U.S.C. § 51, *et seq.* ("FELA") for negligence and various violations of the Locomotive Inspection Act, 49 U.S.C. § 20701, *et seq.* ("LIA"), in connection with these three events in 2021. (Dkt. #1.) Marburger has moved for partial summary judgment against the railroad, seeking a finding of liability based on two LIA violations (dkt. #18), while Soo Line has cross-moved seeking summary judgment on all of Marburger's claims. (Dkt. #26.) Soo Line later filed another motion seeking to amend its answer to admit a violation of the LIA arising out of diesel fumes being released into Marburger's locomotive cab, while continuing to deny that any violation caused his alleged injuries. (Dkt. #57.) For the reasons explained below, the court will grant Soo Line's motion to amend, but deny the parties' cross-motions for summary judgment.

UNDISPUTED FACTS[1]

At all times relevant to this case, plaintiff Jeffrey Marburger was employed by defendant Soo Line Railroad Company as a locomotive engineer, with responsibilities including inspecting locomotives and ensuring their safety, reporting their defects, and safely operating trains. Defendant Soo Line does business as "Canadian Pacific" and is based in Minneapolis, Minnesota.

On September 15, 2021, Marburger was working on a Soo Line train outside of Bensenville, Illinois, as part of a new team swapping in for the team that brought that train to Bensenville. While preparing the train for continued travel to Portage, Wisconsin, Marburger noticed that a wheel slip warning light had been triggered. After Marburger alerted the railroad's mechanical services team of the warning light, he also noticed a battery smell coming from the rear of a locomotive. When the services team arrived and opened the locomotive's battery compartment, Marburger became nauseous and "lost his breath," after which he was taken to a hospital emergency room by ambulance, then given oxygen and discharged.

On December 18, 2021, Marburger was operating a train out of Goodview, Minnesota, en route to Saint Paul, when diesel exhaust entered his locomotive cab. This prompted Marburger and the train's conductor to call the train's dispatcher, stop the locomotive between switches, exit the cab, and wait for the exhaust to clear. Afterwards, Marburger reported experiencing headaches and again becoming nauseous, although he ultimately declined medical attention before checking into a hotel for the evening.

---

[1] Unless otherwise indicated, the following facts are undisputed. The court has drawn these facts from the parties' proposed findings, responses, and briefing consistent with its procedures set forth for both parties at the outset of this lawsuit. (Dkt. #11.)

2

Finally, on December 28, 2021, Marburger fell in the parking lot at Soo Line's Portage depot, apparently on accumulated ice and snow, while walking to his truck after his shift ended.  Marburger then got up, walked back to the depot's breakroom, and sat down at a table.  When he stood up, Marburger fainted and fell to the ground again.  He was then taken to an emergency room.  In the following days, Marburger was diagnosed with a benign brain tumor of the cerebellum, which was surgically removed five months later.  Since his surgery, Marburger has experienced balance issues -- though the parties disagree on their cause -- and has been unable to return to work as a locomotive engineer.

OPINION

Summary judgment is appropriate if the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  If the moving party meets this burden, then the non-moving party must provide evidence "on which the jury could reasonably find for the nonmoving party" to survive summary judgment.  *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406-407 (7th Cir. 2009), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  The court reviews the parties' cross-motions for summary judgment "construing all facts, and drawing all reasonable inferences from those facts, in favor of . . . the non-moving party." *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008).  However, the court "may not grant summary judgment for either side unless the admissible evidence as a whole -- from both motions -- establishes that no material facts are in dispute." *Bloodworth v. Vill. of Greendale*, 475 F. App'x 92, 95 (7th Cir. 2012).

While FELA has the same basic elements as a typical negligence claim -- duty, breach

3

and causation -- "the quantum of evidence required to establish liability in a FELA case is much less than in an ordinary negligence action." *Harbin v. Burlington N. R.R. Co.*, 921 F.2d 129, 131 (7th Cir. 1990). Particularly relevant to the parties' pending cross-motions for summary judgment, the causation requirement is met if "employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *Rogers v. Missouri Pacific R.R. Co.*, 352 U.S. 500, 506 (1957). In turn, LIA expressly requires that railroads only use locomotives that comport with certain safety conditions. 49 U.S.C. § 20701. Moreover, a violation of the LIA constitutes negligence per se under FELA, to which contributory negligence is not a defense. *Urie v. Thompson*, 337 U.S. 163, 188-89 (1949). Finally, if plaintiff succeeds in proving a violation of the LIA, he is not required to prove duty or breach, but must only prove the violation caused the injury claimed. *Crane v. Cedar Rapids & Iowa City Ry. Co.*, 395 U.S. 164, 166 (1969). The court addresses below each party's motion for summary judgment on plaintiff's claims under FELA and the LIA.

**I. Plaintiff's Motion for Partial Summary Judgment**

Plaintiff originally asked the court to enter summary judgment in his favor on three issues, seeking findings that: (1) defendant Soo Line violated the LIA on September 15 and December 18, 2021; (2) those violations caused his alleged injuries; and (3) defendant's alleged defense of contributory negligence is legally barred. (Dkt. #19, at 2.) While defendant now concedes that it violated the LIA on December 18, it still argues that plaintiff lacks evidence of any LIA violation on September 15, because the train's locomotive had been stopped in a train yard for a crew switch and, therefore, was not "in

4

use" as required to find a LIA violation. (Dkt. #43, at 2.) Defendant also maintains that plaintiff has not advanced sufficient evidence for a reasonable jury to find that a LIA violation *caused* his injury on either date. (Dkt. #43, at 1 and Dkt. #58, at 2.) Defendant further insists that it is entitled to advance defenses of contributory or at least "sole cause" negligence at trial for LIA and FELA violations. (Dkt. #43, at 12.) The court addresses each set of these issues in turn.

*First*, to find defendant liable for violating the LIA on September 15, the court must make a threshold finding that "the locomotive was 'in use' at the time of the accident." *LeDure v. Union Pac. R.R. Co.*, 962 F.3d 907, 910 (7th Cir. 2020), *cert. granted in part*, 142 S. Ct. 735 (2021), *aff'd*, 142 S. Ct. 1582 (2022). The question of what puts a train "in use" has a complicated history recently examined by this court in *Brennan v. BNSF Ry. Co.*, 21-cv-265-wmc, 2022 WL 4464754, at *2-3 (W.D. Wis. Sept. 26, 2022).

Relying on *Brady v. Terminal Rail Ass'n of St. Louis*, 303 U.S. 10, 13 (1938), plaintiff contends that the locomotive involved in the September 15 incident remained "in use" because it remained "set out on the main line for a routine crew shift and walkthrough" not sent to a side spur for repairs. (Dkt. #53, at 3.) As the Supreme Court held in *Brady*, this distinction is important since a train is "still in use, though motionless" when only temporarily placed on a receiving track, rather than being "withdrawn from use." 303 U.S. at 13. In contrast, train cars that have reached "a place of repair" are deemed *not* to be "in use." *Id.* (citing *Baltimore & Ohio Ry. Co. v. Hooven*, 297 F. 919, 922-24 (6th Cir. 1924)). Still, plaintiff admits seeking assistance from defendant's mechanical services team *before* perceiving a battery smell or being exposed to any battery fumes. As a result, even if the train was still intended for onwards travel when plaintiff arrived for his shift, defendant

5

argues that it became a "place of repair" by virtue of plaintiff summoning the mechanical services team, instead of proceeding with the planned departure without any inspection, relying heavily on language in *LeDure* that "to service an engine while it is out of use, to put it in readiness for use, is the antithesis of using it." 962 F.3d at 910 (quoting *Lyle v. Atchison T. & S.F. Ry. Co.*, 177 F.2d 221, 223 (7th Cir. 1949)). Again, however, the problem with this argument is that unlike in *LeDure* or *Brady*, the Soo Line train here had yet to be withdrawn from use; rather, there appears no dispute that at least the initial inspection resulting in plaintiff's alleged exposure to battery fumes occurred while the train *remained* on the main line, suggesting both the inspection and anticipated repair of the engine, if any, was still expected to be temporary.

At the same time, plaintiff posits without citation to the record that "if" the locomotive had been "found not to be defective during the walkthrough[,]" it would still have proceeded to its destination. (Dkt. #53, at 3.) Of course, that overlooks the undisputed facts surrounding plaintiff's request for mechanical assistance in the first place, and the possibility that the engine was at some point determined to require removal from use for repair. Thus, even when drawing all inferences in plaintiff's favor, there is arguably a question of material fact as to whether the locomotive was still undergoing a mechanical inspection for continued use and in this sense still "in use" when plaintiff was allegedly injured on September 15, as required to violate the LIA *or* had been removed from use for mechanical repairs when he was allegedly injured.

At this point, despite extensive briefing, the exact facts are still unclear, even though it certainly *appears* that the train was at most on the main track awaiting inspection when plaintiff claims he was overcome by battery fumes, became nauseous, lost his breath and

6

was hospitalized. Accordingly, neither plaintiff nor defendant -- who also moved for summary judgment on this point -- is entitled to judgment in its favor on count two of plaintiff's complaint, and the court will entertain a factual proffer on this question at the Final Pretrial Conference on September 3rd, although causation and damages for plaintiff's exposure to battery fumes will be left to the jury even if that exposure violated the LIA.

*Second*, there are disputed facts and evidentiary hurdles that preclude summary judgment in plaintiff's favor as to the December 18 incident as well, even though defendant now admits plaintiff's exposure to diesel fumes violated the LIA on that day. Specifically, defendant still challenges: (a) the sufficiency of plaintiff's factual showing that his injuries were caused by exposure to diesel fumes in the locomotive cab (dkt. #43, at 8); *and* (b) the admissibility of his proposed expert testimony on that point (dkt. #27, at 10-22). Plaintiff counters that the uncontested evidence shows he was injured by the diesel fumes in the cabin, and the witness defendant describes as an "expert" is instead being offered as a fact witness as to what medical observations and treatment occurred that day. (Dkt. #53, at 6.) Only the latter issue -- the admissibility of plaintiff's proposed testimony from his treating physician -- can be resolved as a matter of law, though whether or not admissible is not decisive to his claim of a LIA violation.

To begin, causation is normally a question for the jury to decide. *Shick v. Illinois Dep't of Human Servs.*, 307 F.3d 605, 615 (7th Cir. 2002). Under FELA, however, a plaintiff need only demonstrate that a statutory violation of the LIA "played any part, even the slightest, in producing the injury." *McGinn v. Burlington Northern R.R. Co.*, 102 F.3d 295, 300 (7th Cir. 1996). The parties disagree about the amount and the import of evidence that plaintiff offers as to causal injury from either of his claims of LIA violations.

7

As to the December 18 incident, both plaintiff and the train's conductor testified that "noxious exhaust gases" were present in the locomotive cab, and that plaintiff reported having a headache and trouble breathing as a result. (Dkt. #19, at 8-9.) At his deposition, the conductor further testified to being able to recognize the smell of "unburned combustion gases," including carbon monoxide in the cab at the time of plaintiff's December 18 injury. (Dkt. #23, at 17.)

Without crediting the conductor's testimony, defendant disputes both plaintiff's ability to discern his exposure to carbon monoxide -- a "colorless, odorless, and undetectable gas" -- and the significance of a medical record noting plaintiff's report of exposure to "high levels of carbon monoxide" at work in the days before his slip-and-fall accident on December 28, albeit within a timeframe that does not comport neatly with his claim of a December 18 LIA violation. (Dkt. #45, at 8 and Dkt. #21-4, at 2.) Defendant's fixation on evidence of plaintiff's exposure to carbon monoxide is a proverbial red herring, since defendant now concedes that whatever the precise composition of these noxious fumes, the leak into the cab and plaintiff's exposure to those fumes violated the LIA.

As a result, plaintiff's claim arising out of his exposure to diesel fumes on December 18, and for that matter, plaintiff's exposure to battery fumes on September 15, is more straightforward: though his recollection is somewhat hazy, he testified that his exposures to fumes on those days were immediately followed by loss of breath, headaches and, on both occasions, nausea. (Marburger Dep. (dkt. #22) 21-22.) The train's conductor also recalled plaintiff having a headache and trouble breathing on December 18. (Dkt. #21-8, at 1.) Though the court agrees that this is *not* a toxic tort case in the classic sense, plaintiff has adduced *some* evidence that diesel and battery fumes caused him to experience injuries.

8

Thus, the court also agrees with plaintiff that his alleged injuries from both exposures are ones where "the connection between the negligence and the injury is a kind that would be obvious to laymen," such that expert testimony on causation is not required. *Myers v. Illinois Central R.R. Co.*, 629 F.3d 639, 642-43 (7th Cir. 2010).

In contrast, defendant questions the sufficiency of plaintiff's proof on causation -- namely, testimony from his treating physician, a non-retained expert, Dr. Kevin Butterfield -- pointing to the Seventh Circuit's requirement that "a treating physician who is offered to provide expert testimony as to the cause of [plaintiff's] injury, but who did not make the determination in the course of providing treatment" should be deemed a retained expert, with the concomitant obligations under Federal Rule of Civil Procedure 26. *Meyers v. Nat'l R.R. Passenger Corp.*, 619 F.3d 729, at 734-35 (7th Cir. 2010). It is undisputed that Dr. Butterfield did not treat plaintiff after his alleged carbon monoxide exposure, and the next time he saw plaintiff -- on April 5, 2022 -- Dr. Butterfield's notes make no mention of plaintiff's diesel fume exposure (Dkt. #52, at 23 and Dkt. #30-17, at 9.) To the extent Dr. Butterfield would testify to injuries he did not treat or opinions he did not form contemporaneously with providing medical care, defendant seeks the exclusion of this causation testimony because plaintiff failed to comply with the designation and disclosure requirements of Rule 26. (Dkt. #27, at 10-11 and Dkt. #43, at 10.) Thus, without ruling on the question of admissibility, which is better suited for a motion in limine, the court *can* find that plaintiff has failed to meet his burden of providing undisputed, admissible evidence as to causation on summary judgment. Even if a jury credits his description of a headache, trouble breathing or nausea, the quantity of carbon monoxide he may have been exposed to is entirely unknown, and no layperson could

9

scientifically determine specific causation here without the assistance of an expert. *Higgins v. Koch Dev. Corp.*, 794 F.3d 697, 702 (7th Cir. 2015) (claim that plaintiff was exposed to chlorine gas at water park lacked expert testimony on causation). So, too, his own speculation that carbon monoxide caused of his injury is insufficient. *Rockwell Automation, Inc. v. Nat'l Union Fire Ins. Co.*, 544 F.3d 752, 757 (7th Cir. 2008).

At bottom, as already explained, whether or not plaintiff was exposed to carbon monoxide, a reasonable jury could find a casual injury given the close proximity of his symptoms to what defendant admits was an unauthorized gas exposure in the cab on December 18 that violated the LIA and (if found to be a separate violation) to battery fumes exposure on September 15. Of course, just as plaintiff may argue that exposure played a part, "even the slightest in producing the injury," so, too, defendant may argue it did not, or if it did, that no monetary damages resulted. *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704-05 (7th Cir. 2011) ("district courts presiding over summary judgment proceedings may not weigh conflicting evidence or make credibility determinations, both of which are the province of the jury").

*Third*, and finally, FELA's plain text precludes defendant from relying on common law defenses such as contributory negligence, assumption of risk, or contractually based immunity. 45 U.S.C. §§ 51, 53-55; *Green v. CSX Transp., Inc.*, 414 F.3d 758, 766 n.2 (7th Cir. 2005) (citing *Williams v. National R.R. Passenger Corp.*, 161 F.3d 1059, 1061 (7th Cir. 1998)). To begin, plaintiff is correct in arguing that defendant cannot invoke contributory negligence as a defense to FELA claims. Insofar as defendant wishes to argue at trial for what is sometimes referred to as a "sole cause" defense, and is simply reframing its argument that plaintiff cannot prove even some causation from exposure to fumes, it may

10

do so.  However, because the Seventh Circuit's pattern jury instructions condition recovery in a FELA case on a showing that defendant's negligence caused *or merely contributed* to the plaintiff's injuries, defendant should not expect the court to instruct the jury using "sole cause" language or characterizing it as a separate "defense."  *See* 7th Cir. Pattern Civ. Jury Inst. 9.03 cmt. e. ("[T]he Committee recommends against what amounts to a second instruction on this element of the plaintiff's case.")

## II. Defendant's Motion for Summary Judgment

As noted, defendant also seeks summary judgment on all of plaintiff's claims. (Dkt. #27, at 1.)  For the reasons discussed above, however, the court will deny that motion as well.  Specifically, defendant argues that two flaws in plaintiff's evidence entitle it to summary judgment:  (1) plaintiff's lack of appropriate causation evidence regarding injuries arising out of his inhalation of battery acid fumes on September 15 and diesel fumes on December 18; and (2) plaintiff's inability to prove defendant breached its duty to provide a reasonably safe place to work in connection with his subsequent slip-and-fall incident on December 28, 2021.  Even if one or more claims go forward, defendant argues that entry of partial summary judgment is appropriate on plaintiff's claim for future loss of earnings because he left his job for reasons unrelated to any injuries for which he seeks relief here.  The court addresses each of these arguments below.

### A. Causation

As already explained, the evidence necessary to survive summary judgment in a FELA case is minimal, and "[i]t is well established that, under FELA, a case *must* go to the jury if there is any probative evidence to support a finding of even the slightest negligence

11

on the part of the employer." *Caillouette v. Baltimore & Ohio Chicago Terminal Ry. Co.*, 705 F.2d 243, 246 (7th Cir. 1983) (emphasis added).  While this is an extremely low bar, it does not dispense with the requirement that plaintiff put forward some evidence of causation.  Indeed, a plaintiff's failure to show causation is "fatal" to his claim.  *Kopplin v. Wis. Cent. Ltd.*, 914 F.3d 1099, 1105 (7th Cir. 2019).

To begin, defendant has conceded violating the LIA on December 18, 2021, when plaintiff was exposed to diesel fumes, but maintains that plaintiff lacks evidence tying that violation to his alleged injuries.  (Dkt. #58, at 2.)  Defendant further argues that plaintiff cannot do so with respect to the September 15, 2021, battery fumes exposure incident.  As discussed above, the former does not require expert testimony, unless plaintiff intends to assert the specific chemical composition of the diesel fumes, nor does the latter unless the composition of the battery fumes is in dispute.  Otherwise, the alleged injuries of dizziness and nausea shortly after exposure to toxic fumes are the kind where "the connection between the negligence and the injury" is sufficiently "obvious to laymen" such that expert testimony on causation is not required, *Myers*, 629 F.3d at 642-43, particularly in light of plaintiff's trip to the emergency room after the battery fumes exposure and his headache and trouble breathing after being exposed to diesel fumes.  (Dkt. #36, at 12.)

Plaintiff accurately frames defendant's argument as largely one impermissibly conflating causal injury with monetary damages.  (*Id.* at 14.)  Defendant is free to argue in defense that plaintiff has failed to prove "simple A-cause-B causation" on the facts here based on lack of proof of composition or amount of fumes plaintiff was actually exposed to, as well as dispute any monetary damages award.  However, both are for the jury to decide given the close proximity of the claimed violations by fume exposure and plaintiff's

injuries. *See* 7th Cir. Pattern Civ. Jury Inst. 9.02 ("The mere fact that an injury occurred does not necessarily mean that the injury was caused by negligence.").

Admittedly, the inferential causal leap here is not as obvious as in some personal injury cases -- for example, a pedestrian's leg being broken after getting hit by a truck. *Kopplin*, 914 F.3d at 1104 (citing *Myers*, 629 F.3d at 643) -- but the proximity of the fumes and claimed injuries here is not so remote as in a toxic tort case that a reasonable jury could not find a causal link. *E.g., Cunningham v. Masterwear Corp.*, 569 F.3d 673, 674-75 (7th Cir. 2009) ("mere exposure to toxins in excess of regulatory levels is insufficient to establish causation.").[2]

## B. Slip-and-Fall Incident

FELA requires railroads to exercise reasonable care to provide a reasonably safe workplace. *Williams*, 161 F.3d at 1061-62. Moreover, questions concerning the reasonableness of parties' conduct are generally factual issues for a jury to decide. *Gracyalny v. Westinghouse Elec. Corp.*, 723 F.2d 1311, 1316 (7th Cir. 1983). Here, the parties disagree on nearly every fact of consequence with respect to plaintiff's slip and fall in the defendant's parking lot on December 28, 2021. They also appear to be at loggerheads over

---

[2] The court will also take up as part of motions in limine the admissibility of an entry by Dr. Butterfield in his medical chart describing a diagnosis of "toxic effect of hydrogen sulfide" four days after plaintiff's battery exposure in September of 2021 (dkt. #30-17, at 4), including whether it was made in the course of treating plaintiff or expression of a later formal opinion of causation, as a non-retained expert must still satisfy the *Daubert* standard to be admissible. *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 756-58 (7th Cir. 2004); *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

the admissibility of much of plaintiff's evidence.³

Still, plaintiff has again proffered enough evidence to overcome defendant's motion for summary judgment on his claim relating to his fall to proceed to a jury, including, but not limited to: defendant's own "drill down" report, concluding that ice caused plaintiff to fall in the parking lot (dkt. #37-4, at 1, 5); testimony from defendant's road foreman that he saw ice in the parking lot after plaintiff fell (dkt. #37-1, at 16-17); and testimony from defendant's director of track and structures regarding the presence of snow and ice in the parking lot on the day after plaintiff's fall. (Dkt. #25, at 23.)⁴

### C. Plaintiff's Loss of Future Earnings Claim

Finally, defendant seeks summary judgment on plaintiff's claim for loss of future earnings, citing his May 2022 tumor resection surgery. (Dkt. #27, at 33.) In particular, defendant asks the court to find that plaintiff is not entitled to any damages post-dating his surgery. However, defendant offers no evidence to suggest that plaintiff's surgery independently rendered him incapable of working permanently, nor that his slip-and-fall injuries could not have contributed to a worse outcome after surgery. Therefore, once

---

³ Defendant even goes so far as to suggest that the conduct of plaintiff's counsel in connection with a set of photographs purportedly taken by plaintiff's wife is sanctionable, if not grounds for referral to attorney disciplinary authorities. (Dkt. #55, at 3 n.1.) Without weighing in on the merits of defendant's serious accusations, the court reminds defendant's counsel that: (1) any motion for sanctions must follow the procedures provided by Federal Rule of Civil Procedure 11; (2) motions for sanctions should only be filed in extreme and unusual circumstances; and (3) both Minnesota and Illinois attorneys are *required* to report any violations of their states' rules of professional conduct to the appropriate professional authorities. Minn. R. Prof. Conduct R. 8.3(a); Ill. Sup. Ct. R. 8.3(a). An attorney's failure to do so may itself be an ethical violation.

⁴ Plaintiff may even be entitled to introduce evidence relating to his alleged exposure to battery and diesel fumes insofar as he has timely drawn a link to his later slip-and-fall accident. However, that, too, is more properly decided by a motion in limine.

again, the limited record before the court does not permit entry of partial summary judgment on disputed issues of fact for the damages phase of trial, should one ultimately be required.

ORDER

IT IS ORDERED that:

1) The motion for partial summary judgment filed by plaintiff Marburger (dkt. #18) is DENIED.

2) The motion for summary judgment filed by defendant Soo Line (dkt. #26) is DENIED.

3) Soo Line's motion to amend its answer (dkt. #57) is GRANTED.

Entered this 26th day of August, 2024.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge